MARCUS, ET AL. *v.* MONTGOMERY COUNTY
COUNCIL, ET AL.

[No. 338, September Term, 1963.]

536

*Decided July 8, 1964.*

*Motion for rehearing or reconsideration filed July 14, 1964, denied July 30, 1964.*

The cause was argued before HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ., and KEATING, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*Philip Marcus,* in proper person, with whom were *John Wil-*

liam *Molyneaux* and *Frank Vrataric, Jr.,* both in proper person, on the brief, for appellants.

*Lawrence E. Speelman, Assistant County Attorney,* with whom was *Robert G. Tobin, Jr., County Attorney,* both of Rockville, Maryland, on the brief, for Montgomery County Council, part of appellees; and *R. Robert Linowes,* with whom was *William M. Cave,* on the brief, for Donald C. Bradley, et al., other appellees.

KEATING, J., by special assignment, delivered the opinion of the Court.

This is a zoning appeal from the Circuit Court for Montgomery County. Four applications for rezoning were combined in one record by the Council because the four subject properties were situated in the same small area and the facts were common to all of the properties. All properties were previously zoned R-90 (single family residence). Two of the applications were to rezone to R-30 (low density garden-type apartments); one requested C-1 (commercial) rezoning; and the fourth asked for C-0 (office) reclassification. The County Council, sitting as the District Council, after referring the matter to the Planning Commission and getting its report and recommendation based upon its own staff's study, granted rezoning, although the Planning Commission, by a three to two vote had recommended disapproval of all four applications. Three of the protestants (the appellants here) appealed to the Circuit Court for Montgomery County from the Council's action.

The trial court dismissed the petitions of the appellants Philip Marcus and Frank Vrataric, Jr., on the ground that they were not "persons aggrieved" and directed entry of a judgment for costs against them. Under the county code, a right of appeal is given only to those persons who are aggrieved. The trial court then considered appellant John William Molyneaux's appeal on the merits and sustained the Council's ruling.

All three appellants challenge the trial court's action on the grounds that Marcus and Vrataric were, in fact, "persons aggrieved" and that the action of the Council was arbitrary, ca-

pricious, discriminatory, or illegal in that the previous "residential" zoning was presumed to be correct, that no error therein was shown, that no substantial changes in the neighborhood since the previous zoning were shown, and that rezoning would increase rather than diminish traffic congestion.

Considering first the question of the right of appellants Marcus and Vrataric to appeal as "persons aggrieved," we find from the record that Mr. Marcus owns and resides at 2020 Henderson Avenue, Wheaton, which is approximately three-quarters of a mile from the subject properties which are located near the Glenmont Shopping Center on Georgia Avenue where it meets the Layhill Road and the Colesville Road, the latter being an extension of Randolph Road. There is no evidence that his home is within sight of the subject properties nor that the proposed rezoning would have any effect whatever on it except such effect as all other residential properties in the whole Wheaton and Glenmont area of Montgomery County might suffer. Mr. Vrataric owns and resides at 2706 Sheraton Street, Wheaton, which is approximately one-quarter of a mile from the subject properties, and the record shows the same relationship, or lack thereof, between his property and the subject properties as exists with respect to Mr. Marcus. Mr. Molyneaux, however, owns and resides at 2010 Erskine Avenue, Wheaton, which is within one block of the subject properties. This Court, in *Pattison v. Corby,* 226 Md. 97, where the appellant lived a considerable distance from and out of sight of the subject property, considered the question of who was a "person aggrieved." There, Judge Horney, in pointing out the distinction between suits brought by taxpayers in their status as members of the general public and suits brought by property owners in zoning controversies, had this to say at page 102:

> "As to this [right of appeal], the text writers and the cases in this and other jurisdictions are in general agreement that an adjacent owner—in the sense of being near or close by—as well as an abutting owner, whose legal rights have been infringed, is an aggrieved person. But the farther a protestant resides from the zoning objected to, the more difficult it is, in the ab-

sence of other pertinent circumstances, to decide whether he has standing to appeal. However, such of the prior Maryland decisions as have dealt with the question of the effect of the nearness or remoteness of reclassified property are in point here and should afford a basis for a decision in this case."

Then, after reviewing a number of prior zoning cases and drawing parallels or distinctions between the distances there involved, it was concluded (on page 103) that:

"In the instant case, where the appellant, other than predicting that the present reclassification was but the first step in a planned non-residential development of adjacent acreage (to that presently rezoned) which will in time adversely affect his property along with other properties in the neighboring subdivisions in the same planning district, assigned no other reason why he was aggrieved, we think that the position of his property in a residentially zoned area—remotely located as it is at a considerable distance from and out of sight of the area rezoned for apartment use—was not enough to show that the appellant had such an interest in the subject matter as bestowed on him standing to attack the validity of the decision of the council."

The situation here in respect to Marcus and Vrataric is almost identical to that of Pattison. We, therefore, hold that the rulings of the trial court on the motions to dismiss the appeals of Marcus and Vrataric were correct.

Now, as to appellant Molyneaux's claim for relief, the record discloses that the original zoning in 1928 placed the subject properties in an R-90 (residential) category and that the last comprehensive rezoning map of 1954 continued them in that category. This was the last official rezoning, but certain planning maps have been adopted by the Planning Commission covering the Northwest Branch Watershed since 1954, some as late as 1961. While it is true that the readoption of a map and plan without change as to a particular property is entitled to the pre-

sumption that it was a deliberate confirmation of the earlier decision and also a presumption that the original decision was correct, it is proper to consider not only changes that have taken place since the adoption of the latest map and plan or the re-adoption of the original, but those changes which took place between the time of the original zoning and the readoption. *Muhly v. County Council,* 218 Md. 543 at 546. In the instant case, the record shows substantial changes in the neighborhood, some between 1928 and 1954, and others since 1954: in fact as late as 1961. They consist of the building of a fire engine house and police station near the subject properties, the building of the Glenmont Shopping Center adjoining one of the subject properties and near the others, the erection of the Americana Apartments within easy sight of the subject properties, and the addition and improvement of public facilities in the widening of roads and enlargement of sewers in the immediate vicinity. Also, the record shows that although the subject properties 'were previously zoned R-90 (single family dwellings), they were, in fact; part of rather large acreages essentially undeveloped although some single dwellings stood here and there as was characteristic of the general area to the northeast of Georgia Avenue. The record also shows that the Council heard evidence in the nature of expert opinions from a properly qualified land planner and an engineering firm as to the best use of the subject property in its relation to the surrounding neighborhood, which opinions differed from that of the planning staff and the majority opinion of the Planning Commission. Moreover, the Council also had evidence in the form of written opinions from the two dissenting members of the Planning Commission who agreed with the applicant's expert planner. It would, therefore, appear that the question of whether or not the original zoning or the readoption thereof was in error was fairly debatable, as was the question of the change in the neighborhood. In the recent case of *Town of Somerset v. County,* 229 Md. 42, Judge Hammond, speaking for the Court, pointed out (at p. 48) that "[c]hanges which may have occurred prior to the last comprehensive rezoning need not be wholly disregarded when a change from that zoning is under consideration. It may be— as was the case here—that it was a rather close question in

the minds of the officials concerned whether a change in the zoning of the land involved should not have been made at the time of the last comprehensive zoning, and additional changes thereafter may bring the zoning status of the land as to which action is sought over the line dividing different zones." We have uniformly held that the courts will not substitute their judgment for that of the legislative body in such circumstances. See *Eckes v. Board of Zoning Appeals,* 209 Md. 432, and numerous later cases. If the question is fairly debatable, the action taken is not arbitrary, capricious, discriminatory, or illegal.

Appellants draw attention to the claim that commercial and apartment zoning is likely to bring more people to a given area and that as a consequence the traffic and school population will increase, and that those members of the neighborhood using the local school and shopping area will suffer from the consequent traffic congestion and over-populated school facilities. These are inconveniences likely to be suffered by any member of the public, far or near, and do not require a denial of the application.

*Judgments affirmed, with costs.*